UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KAREEM CURRY,

      Petitioner,

  v.                                                                        Case No. 05-C-292

WARDEN CATHERINE J. FARREY,

      Respondent.

## DECISION AND ORDER ON THE HABEAS CORPUS PETITION

      Kareem Curry ("Curry"), is a prisoner incarcerated pursuant to a Wisconsin state court judgment. Proceeding pro se, Curry seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This court previously recommended that Curry's petition be denied and the case dismissed because Curry failed to complete the portion of the pro se habeas corpus form that requires petitioners to state their grounds for relief. (Order, July 1, 2005.). Curry subsequently objected to dismissal of this case and filed an amended petition that set forth three grounds for relief. In light of these subsequent submissions, the Honorable J. P. Stadtmueller, United States District Judge, declined this court's recommendation and instructed that a preliminary review of the amended petition be conducted, pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Upon screening Curry's amended petition, this court ordered the respondent to answer the petition. The parties subsequently consented to the full jurisdiction of a magistrate judge, and the matter was reassigned to this court for all further proceedings.

**FACTS**

Following a jury trial, on July 11, 2002, Curry was convicted of one count of discharging a firearm from a vehicle, in violation of Wisconsin Statute § 941.20(3)(a)2, and one count of first degree recklessly endangering safety by use of dangerous weapon, in violation of Wisconsin Statute §§ 941.30(1) and 939.63.(Ans. Ex. A.) In both counts Curry was charged as a party to the crime, see Wis. Stat. § 939.05. (Ans. Ex. A.) For these two charges, Curry was sentenced on July 19, 2002 to a total of fourteen yeas in prison. (Ans. Ex. A.) Curry was also convicted of resisting or obstructing an officer, in violation of Wisconsin Statute § 946.41(1), for which he was sentenced to nine months in the House of Corrections. (Ans. Ex. A.)

In its unpublished per curium decision, the court of appeals stated the following:

> On January 26, 1999, shooting erupted in a parking lot filled with cars and people. In May 2001, the State charged Curry as one of the shooters.
> The trial court denied Curry's motion to dismiss based on the twenty-eight month charging delay and proceeded with a jury trial. There was testimony that at least some of the shooting came from the car Curry was riding in at the time. There was also evidence that one of the shooters was Curry.
> After Curry's conviction he moved for postconviction relief. The trial court denied relief on briefs and without a hearing . . . .

State v. Curry, 2004 WI App 186, ¶¶ 2-4.

The court of appeals affirmed Curry's conviction on the basis that Curry failed to demonstrate that any alleged prejudice was the result of the charging delay. Id. at ¶ 5.

Second, Curry argued that the evidence was insufficient to convict him because the crime requires proof that the vehicle was either on a highway or in a parking lot open to the public when the shooting occurred. Id. at ¶ 6 (citing Wis. Stat. § 941.20(3)). "However, the trial court instructed the jury that the crime required proof that 'the defendant or another person discharged a firearm from a vehicle

- 2 -

while on a highway,' leaving out the phrase 'or in a parking lot open to the public.'" Id. The court of appeals held that the error in the court's instructions was harmless because the car's location was not an issue at trial; it was undisputedly in a parking lot open to the public. Id. at ¶ 7.

Third, Curry argued:

> that the trial court gave erroneous and confusing jury instructions on both the discharging a firearm and reckless endangerment charges. On the former, the court instructed the jury that "If you are satisfied, beyond a reasonable doubt, that the defendant or another person intentionally discharged a firearm from a vehicle …, you should find the defendant guilty." In the latter instructions, the court informed the jury that "If you are satisfied beyond a reasonable doubt, that the defendant or another person intentionally aided and abetted the commission of this offense, you should find the defendant guilty if the State proves this … beyond a reasonable doubt." In both cases, Curry contends that the instructions literally directed the jury to convict Curry if anyone committed the crime in the first instance or anyone aided and abetted it in the second.

Id. at ¶ 8.

Although the court of appeals recognized that the instructions were problematical, the court affirmed Curry's conviction because Curry did not object at the time and any error did not form the basis for discretionary reversal because the court appropriately instructed the jury with respect to Wisconsin's party to a crime statute and thus "allowed the jury to fully and fairly determine Curry's guilt under the correct legal standards." Id. at ¶ 9.

Fourth, Curry argued "there was insufficient evidence to find him guilty of the endangering safety charge." Id. at ¶ 10. The court held that because Curry was charged as a party to the crime, the evidence was sufficient. Id.

Finally, Curry argued that the trial court improperly denied his ineffective assistance of counsel claim without affording him a hearing. Id. at ¶11. Specifically, Curry alleges that his trial counsel was ineffective for failing to introduce medical evidence to support his claim that his statement was not

- 3 -

voluntary because he was in pain from injuries he had suffered. Id. The court of appeals held that the trial court properly denied Curry's request for hearing because Curry failed to present a sufficient basis for a hearing. Id. at ¶ 12. On January 11, 2005, the Wisconsin Supreme Court denied Curry's petition for review.

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court; or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and

applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

With the § 2254(d) and (e)(1) standards in mind, the court will now turn to the issues raised by the petitioner.

**ANALYSIS**

Curry seeks relief on three grounds: (1) that the complaint against him was issued after substantial delay; (2) that his trial counsel was ineffective for failing to object to certain jury

- 5 -

instructions; and (3) that his trial counsel was ineffective for failing to use the preliminary hearing transcript to impeach state witnesses and for failing to call key witnesses in Curry's defense.

The respondent argues that with respect to Curry's first two grounds for relief, the decision of the Wisconsin Court of Appeals was not contrary to or involve an unreasonable application of federal law as determined by the United States Supreme Court. As for his third ground for relief, the respondent argues that Curry procedurally defaulted this claim by failing to raise it in the state courts.

**Delay**

Curry alleges that he was arrested on January 26, 1999, and then released on January 29, 1999, because the government lacked sufficient evidence to prosecute. (Amend. Pet. at 12A.) He then alleges that months later, a co-actor who was upset that Curry had not also been convicted, "conspired" with another person to provide additional false evidence, thereby permitting the state to proceed with its prosecution and to obtain the conviction. (Amend. Pet. ¶ 12A.) In his brief to the court of appeals, Curry did not raise this argument. Rather, he argued that the delay was prejudicial, because as a consequence he was unable to locate two witnesses who would have testified that he was outside the car when the shots were fired. (Ans. Ex. B at 16-17.)

Statutes of limitations provide the primary protection against the state bringing overly stale criminal charges. United States v. Lovasco, 431 U.S. 783, 788 (1977) (quoting United States v. Marion, 404 U.S. 307, 322 (1971)). However, statutes of limitations do not fully define a defendant's rights and "the Due Process Clause has a limited role to play in protecting against oppressive delay." Id. at 789. Thus, the Court held, "the Fifth Amendment requires the dismissal of [a criminal charge], even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in

bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." United States v. Gouveia, 467 U.S. 180, 192 (1984).

The court of appeals noted that Curry did not begin to search for the two alleged witnesses until June of 2002, more than a year after he was charged with the offense and roughly a month before his jury trial was to begin. 2004 WI App 186, ¶ 5. Therefore, if the passage of time made it difficult to find witnesses, this was a consequence of Curry's inaction and Curry has failed to demonstrate that the state's delay in bringing the charges had any relevance to his inability to locate witnesses. Id.

This court similarly concludes that Curry has failed to demonstrate that the government's delay resulted in prejudice and therefore this court is unable to conclude that the decision of the court of appeals was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court. Thus, the court must deny Curry's petition as to this ground for relief.

**Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that the Wisconsin court's decision was either contrary to, or the based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1) standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such
- 7 -

a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant, under the second prong, the court does not need to consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

Curry argues that his trial counsel was ineffective for failing to object to the language in the jury instructions.

As the court of appeals noted in its decision, the error in the jury instructions was inconsequential because the jury was properly instructed with respect to the elements of the party to the crime statute. For this same reason, Curry is unable to demonstrate that any error resulted in prejudice to him and therefore Curry cannot demonstrate that he was denied the effective assistance of trial counsel by his attorney's failure to object to the jury instructions. Therefore, this court is unable to conclude that the decision of the court of appeals was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, and the court must deny Curry's petition as to this ground for relief.

As for Curry's second claim of ineffective assistance of counsel, Curry has failed to raise the issue that his trial counsel was ineffective for failing to call certain witnesses at trial. Curry argues that this is because his appellate counsel refused to raise the issue. (Amend. Pet. ¶ 13.) The respondent argues that this claim has been procedurally defaulted because Curry failed to present it to the state courts and there is no available state court remedy available for him to pursue this claim. (Ans. at 4-5.)

The court agrees with the respondent that Curry lacks a procedural means by which to directly raise this issue in light of the holding of State v. Escalona-Naranjo, 185 Wis.2d 168, 517 N.W.2d 157 (1994). However, by way of a Knight petition, Curry may be able bring this claim indirectly by alleging that his appellate counsel was ineffective for failing to raise this issue. See State v. Knight, 168 Wis. 2d 509, 522, 484 N.W.2d 540 (1992). Assuming without deciding that this procedural avenue is sufficient to prevent this court from holding that Curry's claim is procedurally defaulted, the court must nonetheless conclude that by failing to exhaust state remedies with respect to this ground, Curry's petition is a mixed petition. See Rhines v. Weber, 544 U.S. 269 (2005); Rose v. Lundy, 455 U.S. 509 (1982); 28 U.S.C. § 2254(c).

Ordinarily, when confronted with an unexhausted claim, a court will permit the petitioner to return to state court to exhaust his state court remedies. However, in light of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1), Curry would be precluded from again pursuing his present petition after exhausting state remedies unless this court granted a stay in these proceedings and held Curry's present petition in abeyance as he exhausted state court remedies. See Rhines, 544 U.S. at 275. A district court should grant a stay only when a "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278. Upon evaluating Curry's claim, the court finds that it is without potential merit and therefore shall be denied pursuant to 28 U.S.C. § 2254(b)(2).

Curry argues that his trial counsel should have called Katherine Bond ("Bond") and Latasha Strong ("Strong"), both of whom testified at the preliminary hearing, as defense witnesses during the jury trial.

Bond was shot in the leg as a result of the incident for which Curry was charged. (Ans. Ex. J at 9.) Bond testified that she recalled seeing gunfire that evening coming from a gray Lincoln; Curry was in a gray Monte Carlo. (Ans. Ex. J at 8, 12.) During the panic that resulted once the shooting began, Bond saw people with guns, but she never saw Curry with a gun. (Ans. Ex. J at 13-14.) She scrambled into Strong's car and at some point, she does not recall when, she was struck by a bullet. (Ans. Ex. J at 9.) Her doctors told her that she was struck while she was running. (Ans. Ex. J at 9.)

Although a photograph was introduced at the hearing revealing that Strong's car was struck with multiple bullets, Curry was not aware that the car had been hit during the incident or if the bullet holes may have been there previously. (Ans. Ex. J at 17.)

Strong testified that the damage to her vehicle was the result of the shooting and it was struck by approximately three bullets. (Ans. Ex. J at 23-24.) Strong testified that there were several people shooting but she could not tell exactly who was shooting because she ducked down once the shooting started. (Ans. Ex. J at 25.) Strong stated that as a result of the shooting she was injured by glass from the windshield getting in her eye. (Ans. Ex. J at 27.) Strong similarly described the scene as one of panic. (Ans. Ex. J at 29.) As she was trying to drive away from the scene, she was simultaneously trying to keep her head down, resulting in the side of her vehicle being damaged. (Ans. Ex. J at 29.) Strong testified that she never saw Curry with a gun and did not see anyone shoot from the Monte Carlo. (Ans. Ex. J at 30.) However, based upon the questions of the prosecutor and the defense attorney, the transcript implies that Strong provided a statement to a detective on the night of the incident that, at least to some degree, implicated Curry. (Ans. Ex. J at 25-26, 30-31.)

Based upon the testimony of these witnesses, it is clear to this court that there were many explanations as to why defense counsel could have reasonably elected not to call either of these

witnesses. Therefore, Curry is unable to demonstrate that he was denied the effective assistance of counsel.

It is clear from the testimony of both Bond and Strong that neither saw much that evening. Both described the scene as chaotic. Both were focused on the sole goal of getting away, so much so that Strong kept her head down while she drove and does not recall how the side of her car got damaged, and Bond, most remarkably, did not even recall being shot. Although both testified that they did not see Curry with a gun, their lack of observation was in no way equivalent to an exoneration of Curry. Thus, their testimony would not have led a jury to conclude that Curry in fact did not have a gun, but rather only that two panic-stricken high-school students in the midst of a chaotic and life-threatening scene, did not happen to see him with one.

There were additional legitimate reasons as to why a defense attorney may not have called either of these witnesses. For example, the jury could be sympathetic to the victims, which could result in prejudice toward the defendant who is charged with the shooting. This is particularly true when the victim is a young female who appears to have been an unintended victim of a shooting.

In any event, as for Strong, any argument that Curry's attorney was ineffective for failing to call her is additionally meritless because she testified as a witness for the state and was cross-examined by Curry's defense counsel. As part of this cross-examination, Curry's attorney attempted to impeach Strong by pointing out that her testimony at the preliminary hearing was inconsistent with her testimony at trial. (Ans. Ex. U at 51-61.)

Second, Curry argues that his trial counsel should have impeached witnesses at trial with their inconsistent statements at the preliminary hearing. Curry does not point to any specific inconsistent statements provided by any witnesses, but a review of the record, as noted above, details that Curry's

- 11 -

attorney did attempt to impeach Strong with the material inconsistencies in her testimony at the preliminary hearing as opposed to trial. As for the testimony of John Fisher, the only other witness to testify at both the preliminary hearing and at trial, the court has reviewed the transcripts of both proceedings and has not discovered any material inconsistencies for which a lack of impeachment was unreasonable and certainly none that resulted in prejudice to Curry.

In light of the fact that Curry's trial counsel was not ineffective, Curry is unable to demonstrate that Curry's appellate counsel was ineffective for failing to raise this issue on appeal. Therefore, Curry's claim is without merit and the court shall deny Curry's petition as to this ground. For the reasons set forth above, the court enters the following order:

**IT IS THEREFORE ORDERED** that Curry's petition for a writ of habeas corpus is **denied**. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 1st day of November, 2007.

BY THE COURT:

s/Aaron E. Goodstein
AARON E. GOODSTEIN
U.S. Magistrate Judge